(861 P.2d 1382)
No. 69,021

STATE OF KANSAS, *Appellee*, v. DANIEL F. JUAREZ, *Appellant.*
Petition for review denied 254 Kan. 1009 (1994).

Opinion filed November 5, 1993.

*Stephen Douglas Bonney*, special appellate defender, of Kansas City, Missouri, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Terra D. Morehead*, assistant district attorney, *Nick A. Tomasic*, district attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before BRAZIL, P.J., RULON and PIERRON, JJ.

RULON, J.: Daniel F. Juarez, defendant, appeals his convictions, after a jury trial, on three counts of aggravated sodomy, in violation of K.S.A. 21-3506(c)(iii), and on one count of promoting sexual performance by a minor, in violation of K.S.A. 21-3519. Defendant alleges there was insufficient evidence to support a guilty verdict and remarks made by the prosecution during closing arguments should have resulted in the district court declaring a mistrial. We affirm.

The charges against defendant arose from sexual acts defendant performed with W.C., a 16-year-old boy. During the summer of

1989, W.C. was living with his grandparents in Kansas City, Kansas, so he could participate in a summer job program for disabled youths. W.C. had been in special education classes throughout his school years and was considered to be educably mentally handicapped. The school psychologist at W.C.'s school testified that W.C. had an intelligence quotient, based on the WISCR, of 67 and a mental age equivalent of seven or eight years old.

W.C. became acquainted with defendant while shopping at the American Council of the Blind Thrift Store where defendant was employed. Frequently W.C. accompanied defendant to defendant's apartment after work. While at the apartment, on at least two occasions, W.C. watched pornographic videotapes that defendant had rented. W.C. testified that on more than one occasion defendant performed oral and anal sex on him. W.C. additionally testified that he performed oral and anal sex on defendant. Defendant also took Polaroid photographs of W.C. in an undressed, sexually aroused condition and had W.C. take similar photographs of defendant.

When W.C.'s mother became aware that sexual activity might have taken place between W.C. and defendant, she took W.C. to the K.U. Medical Center for a medical evaluation. The examining physician found physical evidence to indicate that W.C. had engaged in anal intercourse. Later, W.C.'s mother contacted the police.

During trial, the State presented testimony by W.C., his school psychologist, his mother, one of his friends, and his examining physician; the photographs that W.C. and defendant had taken of each other; and statements made by defendant admitting a sexual relationship between defendant and W.C. Ultimately, defendant was convicted of three counts of aggravated criminal sodomy and one count of promoting sexual performance by a minor.

The Kansas aggravated criminal sodomy statute, K.S.A. 21-3506, provides:

"Aggravated criminal sodomy is:

(a) Sodomy with a child who is not married to the offender and who is under 16 years of age;

(b) causing a child under 16 years of age to engage in sodomy with any person or an animal; or

(c) sodomy with a person who does not consent to the sodomy or causing a person, without the person's consent, to engage in sodomy with any person or an animal, under any of the following circumstances:

(i) When the victim is overcome by force or fear;

(ii) when the victim is unconscious or physically powerless;

(iii) *when the victim is incapable of giving consent because of mental deficiency or disease, which condition was known by the offender or was reasonably apparent to the offender*; or

(iv) when the victim is incapable of giving consent because of the effect of any alcoholic liquor, narcotic, drug or other substance administered to the victim by the offender, or by another person with the offender's knowledge, unless the victim voluntarily consumes or allows the administration of the substance with knowledge of its nature.

(2) Aggravated criminal sodomy is a class B felony." (Emphasis supplied.)

Defendant argues that in order to obtain a conviction under K.S.A. 21-3506(c)(iii), the State must prove not only that the victim is mentally deficient but also that the mental deficiency renders the victim incapable of giving consent. The State agrees that it must prove that the victim is mentally deficient, but contends the victim's capacity to consent to the sex act is solely an issue for the jury to decide, based upon the evidence presented.

In *Keim v. State*, 13 Kan. App. 2d 604, 777 P.2d 278 (1989), this court upheld the constitutionality of a provision in the Kansas rape statute that is nearly identical to K.S.A. 21-3506(c)(iii). Keim argued that because a nonprofessional could not judge when a mental deficiency created a situation where consent was not possible, there was no clear standard by which a defendant could determine whether an individual with a mental handicap had capacity to consent. We disagreed.

The *Keim* court relied upon a similar provision in the Iowa Code that had been upheld by the Iowa Supreme Court in *State v. Sullivan*, 298 N.W.2d 267 (Iowa 1980). The *Sullivan* court reasoned that " '[t]he potential offender must simply determine if his or her partner understands the nature and consequences of engaging in the sex act. Under normal circumstances a mental incapacity to consent would be apparent in ordinary social intercourse.' " 13 Kan. App. 2d at 607 (quoting 298 N.W.2d at 272-73).

The *Keim* court further relied upon the case of *State v. Degrenier*, 120 N.H. 919, 424 A.2d 412 (1980), in which the New Hampshire Supreme Court construed its similarly worded statute

as "prohibit[ing] intercourse only with those persons whose mental deficiency renders them incapable of legally consenting to the act." 13 Kan. App. 2d at 607. In analyzing *Degrenier*, the *Keim* court stated that "although the degree of mental defectiveness of the victim necessary to violate the statute may not be entirely clear, the statute is sufficient 'to give the defendant fair warning that, by engaging in sexual intercourse with one who he knows or has reason to know is mentally defective in any recognizable and appreciable degree, he is violating the statute.' " 13 Kan. App. 2d at 607 (quoting 120 N.H. at 921).

The *Keim* court adopted the reasoning from *Sullivan* and *Degrenier* and stated that "[t]he language [of the rape statute] sufficiently warns a person of common intelligence that engaging in sexual intercourse with one who is mentally handicapped to a degree that he or she cannot understand the nature and consequences of engaging in the act is prohibited." 13 Kan. App. 2d at 608. The court concluded that "[u]nder normal circumstances a mental incapacity to consent would be apparent in ordinary social intercourse." 13 Kan. App. 2d at 608.

The same rationale is applicable to this case, where we are not concerned with a defendant's ability to determine mental incapacity to consent but rather a juror's ability to do so. *Keim* held that a person of common intelligence is capable of determining whether an individual's mental deficiency renders him or her incapable of giving consent. A juror, by definition, is a person of common intelligence. Therefore, when the capacity of a mentally deficient individual to consent to a sexual act is at issue, the jury is capable of determining whether that individual is able to understand the nature and consequences of engaging in such an act. In reaching its determination, the jury should evaluate the individual's behavior in normal social intercourse as well as consider any expert testimony concerning the individual's mental deficiency.

Defendant argues there was insufficient evidence presented at his trial for the jury to conclude that W.C. was incapable of consent due to mental deficiency. It is well established that "[w]hen the sufficiency of the evidence is challenged, the standard of review on appeal is whether, after review of all the evidence,

viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Graham*, 247 Kan. 388, 398, 799 P.2d 1003 (1990). Upon review of the record in this case, we are satisfied the State presented enough evidence for the jury to conclude that W.C. was incapable of consent because of his mental deficiency. The testimony of W.C.'s psychologist and his mother, as well as the demeanor of W.C., were more than sufficient to support such a finding. We therefore conclude defendant's sufficiency of the evidence argument is without merit.

Defendant next contends that an improper statement made by the prosecutor misled and prejudiced the jury. During closing argument, the prosecutor made the following remark:

"All the State has to prove to you is that [W.C.] was suffering from a mental deficiency or disease. We have proven that to you by [the school psychologist]. If we had not proven to you a crucial element then Judge Lamar would never have even submitted this case to you."

This statement implies that, by submitting the case to the jury, the district court is endorsing the proposition that W.C. is mentally deficient. The court clearly did not approve of the prosecution's remark but felt such remark caused no harm to the defendant.

"In deciding whether prosecutorial misconduct requires reversal, an appellate court determines whether there was little or no likelihood the error changed the result of the trial." *State v. Chism*, 243 Kan. 484, 493, 759 P.2d 105 (1988). "Where the evidence of guilt is of such direct and overwhelming nature that it can be said that the erroneous admission of certain other evidence could not have affected the result of the trial, such admission is harmless error." *State v. Thompson*, 221 Kan. 176, 183, 558 P.2d 93 (1976).

The evidence presented by the State of W.C.'s mental deficiency was so substantial that it is highly unlikely that the improper prosecutorial remark had any effect on the jury's verdict. During the trial, the prosecution called W.C.'s school psychologist, his mother, and a friend of his to testify that W.C. was mentally deficient. Further, W.C. was presented as a witness so that the jury could personally observe his demeanor. Taken to-

gether, this presentation of evidence constituted overwhelming evidence of W.C.'s mental deficiency. While this court does not approve of the improper remark made by the prosecution here, we are satisfied such remark could not have affected the outcome of the trial and was therefore harmless error.

Affirmed.