No. 72,139

STATE OF KANSAS, *Appellee*, v. DALE M.L. DENNEY, *Appellant*.

(905 P.2d 657)

Opinion filed October 27, 1995.

*Stephen C. Moss* and *Reid T. Nelson*, assistant appellate defenders, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Doyle Baker*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

The opinion of the court was delivered by

LARSON, J.: Dale M.L. Denney appeals from his convictions of two counts of aggravated criminal sodomy, two counts of aggravated sexual battery, two counts of aggravated weapons violation, and one count of aggravated battery, in two separate cases consolidated for trial.

Denney claims the trial court erred in failing to give a limiting instruction and an instruction on the lesser included offense of attempted aggravated sexual battery, and that his trial counsel was ineffective.

The evidence in both cases was extensive and uncontroverted by Denney. We will briefly summarize the testimony.

### Case No. 93 CR 1268

The victim, A.L., testified that on July 16, 1993, she went to see Denney, a former boyfriend, to collect a $95 debt. A.L. interrupted a conversation between Denney and a female, who immediately left. Denney accused A.L. of ruining his chance for a sexual encounter.

A.L. went with Denney to his apartment after he indicated he would repay the indebtedness. But, when they entered the apartment, Denney informed A.L. he did not have the money. Denney made several unsuccessful sexual advances toward A.L., and when she tried to leave, Denney refused to allow her to do so and started beating her on the head with a closed fist. A.L. fell and Denney choked her until she blacked out.

When A.L. regained consciousness, Denney had placed a belt around her neck, which he used to pull her to the floor face down. He then proceeded to remove her clothes, rubbed his penis with Vaseline, and penetrated her anus with his penis. Denney continued to beat her on the head and stated he was going to kill her.

Denney sodomized A.L. a second time after moving her to the couch. He then walked to the kitchen, where he grabbed a knife and placed it at her throat while she was allowed to go to the bathroom.

After leaving the bathroom, Denney kept A.L. at knifepoint and continued to threaten her, her family, and her friends. Denney attempted intercourse with A.L., but discontinued doing so because she was unable to breathe.

Denney allowed A.L. to put her shorts back on and said he was going take her to the hospital. Denney continued to hold the knife to A.L.'s throat while pushing her to the floor so she could attempt to find her keys. A.L. was successful in distracting Denney, man-

aged to unlock the apartment door, and ran screaming from the apartment. ·

Denney ran after A.L. and continued to beat her. A neighbor, Theresa Williams, intervened, and Denney fled. Williams called the police and paramedics, and A.L. was taken to the hospital. She had multiple bruises on her face, her eyes were swollen shut, her nose was broken, and she had abrasions and scrapes on her body. The rape kit revealed no evidence of seminal material, although testimony indicated this was not necessarily indicative of whether penetration occurred.

Evidence recovered by police from Denney's apartment corroborated A.L.'s statement, although a knife fitting the sheath found on the floor and the victim's cash were never recovered. Bloodstains found on the couch cushions and A.L.'s clothing were of a type that a police chemist testified could have come from A.L.

At trial, Dr. William May, the emergency room physician who attended A.L., testified that the genital examination revealed no trauma. He also testified as to A.L.'s facial injuries revealed in photographs taken after the incident.

### Case No. 93 CR 1343

The victim in this case, P.D., is Denney's sister-in-law. She testified Denney had lived with her and her husband for several months in 1992 but moved out after she ordered her husband to make him leave. Approximately a week later, in October 1992, Denney returned to the house around 2:00 a.m., when P.D.'s husband was at work and she was home with her children.

After Denney was admitted, he went to the kitchen, obtained a steak knife, told P.D. he "wanted" her, and pushed her onto the bed while holding the steak knife to her throat. After undressing her, he touched her vagina with his penis, and she threw him off her. As P.D. was lying face down, Denney placed his penis inside her anus. After sodomizing P.D., Denney ejaculated on the bedroom floor.

P.D. told her husband about the attack but refrained from filing a complaint with the police after being begged not to do so by Denney's mother. P.D.'s husband drowned in June 1993, and P.D.

was contacted by the police after A.L. informed them that Denney had previously confessed to his sister that he had obtained a knife and sodomized P.D.

Denney's parole officer testified Denney was released from prison in 1992 after being incarcerated for felony convictions of rape and aggravated burglary. The trial court admitted a certified journal entry of the convictions into evidence.

The jury convicted Denney on all charges. He was sentenced to a controlling term of 36 years to life in 93 CR 1343 and a term of 228 months in 93 CR 1268, to run consecutively.

*Did the trial court err in failing to give an instruction limiting the use of prior crimes evidence?*

To prove an essential element of the aggravated weapons violation charges (that Denney had possessed a prohibited weapon within 5 years of being convicted of or being released from imprisonment for a felony), the State introduced evidence of Denney's previous convictions for rape and aggravated burglary.

At the instructions conference, defense counsel requested the following instruction to limit the purpose for which the jury could consider the prior crimes evidence:

"Evidence has been admitted tending to prove that the Defendant has been convicted of crimes other than the present crimes charged. This evidence may be considered solely for the purpose of proving the previous conviction."

The trial court summarily declined to give the requested instruction, stating: "Case law is very clear that it's not necessary."

Denney argues the trial court's failure to give the requested limiting instruction allowed the jury to infer he had the propensity to commit crimes. He strongly contends the error was highly prejudicial because the prior crimes were similar to the crimes for which he was on trial and, after a proper request was made, it was mandatory for the jury to be instructed that the evidence of the prior crimes could only be used to prove an essential element of the aggravated weapons violation charges.

The specific statutory basis for Denney's claim is K.S.A. 60-406, which states:

"When relevant evidence is admissible as to one party or for one purpose and is inadmissible as to other parties or for another purpose, the judge upon request shall restrict the evidence to its proper scope and instruct the jury accordingly."

The interpretation of a statute is a question of law, upon which our review is unlimited. *State v. Myers*, 255 Kan. 3, 872 P.2d 236 (1994).

In this case it is important to remember that Denney's counsel specifically requested the limiting instruction. Had he not done so, the rule of *State v. Knowles*, 209 Kan. 676, Syl. ¶ 3, 498 P.2d 40 (1972), would allow us to readily affirm this conviction: "Where proof of a previous conviction is an essential element of a crime charged, failure to give an instruction limiting the purpose for which such conviction may be considered is not reversible error in the absence of a request."

Denney contends *State v. Gander*, 220 Kan. 88, 90-91, 551 P.2d 797 (1976), is authority for the rule that a limiting instruction is required when requested. The central issue in *Gander*, however, was alleged error based on the trial court's refusal to sever the weapons charge from battery and robbery counts because the prior convictions necessary to prove the weapons charge would prejudice the jury on the other charges. After holding that severance was not required, the *Gander* court went on to state:

"Moreover, in an abundance of caution, the trial court gave a limiting instruction to the effect that the evidence of the prior conviction should only be considered in connection with the weapons violation. The evidence was admissible without regard to K.S.A. 60-455, so the instruction was not required in the absence of a request. (*State v. Knowles*, 209 Kan. 676, 498 P.2d 40, Syl. Para. 3.) It did however, help to offset any prejudice resulting from the joinder." 220 Kan. at 90-91.

The State concedes the trial court should have given the requested instruction but contends the error does not require reversal. The State argues that the testimony of both victims was clear and uncontroverted that knives were held to their throat and that both were sodomized at knifepoint and intentionally touched in a manner designed to satisfy defendant's sexual desires. Further, A.L.'s claims that Denney beat her severely are undisputed. In addition, her claims are reinforced by the testimony of the emer-

gency room doctor and detailed in pictures introduced into evidence. The State argues the error did not prejudice Denney's rights and should be considered harmless.

Denney contends the admission of prior crimes evidence when relevant to prove a material fact, including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident under K.S.A. 60-455, is analogous to this issue. Where evidence of prior crimes is so admitted, a limiting instruction is usually required. See generally PIK Crim. 3d § 52.06.

Central to Denney's argument is the holding of *State v. Roth*, 200 Kan. 677, Syl. ¶ 2, 438 P.2d 58 (1968), where we stated:

"Where evidence is admissible under the provisions of K.S.A. 60-455 as tending to prove intent, knowledge and absence of mistake or accident but is not admissible under the provisions of K.S.A. 60-421 to impair the credibility of the defendant who had taken the witness stand in his own defense, the trial court must so instruct the jury."

Denney's reliance on *Roth* is misplaced. In *Roth*, the requirement of a limiting instruction arose in the context of K.S.A. 60-455, and the court found it important that Roth had placed his credibility in issue by testifying on his own behalf. Here, Denney did not testify, and the prior crimes evidence is admissible under K.S.A. 1993 Supp. 21-4202.

Properly analyzed, the cornerstone of the *Roth* rule requiring a limiting instruction is not K.S.A. 60-455, but rather K.S.A. 60-421, which provides in applicable part: "Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his or her credibility." Roth's credibility was at issue because he testified on his own behalf. See also *State v. Whitehead*, 226 Kan. 719, 722, 602 P.2d 1263 (1979).

*Roth* recognized that when evidence of a prior crime has been admitted and the jury has not been instructed as to how the evidence might be relevant to the issues before it, the risk of prejudice from misuse of the evidence before it might be so great as to require reversal. In the absence of an instruction limiting the usage of K.S.A. 60-455 evidence, the jury is left to speculate as to how the prior evidence is to be used.

Such is not the case here because, although a limiting instruction, PIK Crim. 3d § 52.06, Comment III (B)(5), should have been given, the jury was made aware of the proper consideration and use of the evidence of the prior conviction through the instruction relating to the prior conviction being an essential element in the proof of the weapons violation charge. Consequently, the risk of prejudice here is materially lessened, and the need for reversal is open to doubt. The appellate court is justified in looking to all of the facts and circumstances of the case to determine if the failure to give the limiting instruction, even when it was requested, is reversible error.

Having determined that reversal of this case is not automatically required, the issue then becomes whether the error was of such a magnitude that reversal is nevertheless indicated. This leads us to a discussion of the background for our harmless error rule. K.S.A. 60-261 states:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

Similarly, K.S.A. 60-2105 directs:

"The appellate court shall disregard all mere technical errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining, where it appears upon the whole record that substantial justice has been done by the judgment or order of the trial court; and in any case pending before it, the court shall render such final judgment as it deems that justice requires, or direct such judgment to be rendered by the court from which the appeal was taken, without regard to technical errors and irregularities in the proceedings of the trial court."

There are a myriad of cases citing these two statutory provisions where criminal and civil results of trial courts have been upheld as not being "inconsistent with substantial justice," as having "not affected" the substantial rights of the parties, and as being merely "technical errors and irregularities." See, *e.g., State v. Damewood,*

245 Kan. 676, 684, 783 P.2d 1249 (1989); *State v. Alexander*, 240 Kan. 273, 276, 729 P.2d 1126 (1986).

Where the error is of a federal constitutional magnitude, before a reviewing court can determine the error is harmless, the court must find beyond a reasonable doubt that there is little, if any, likelihood that the error has changed the outcome of the trial. *Chapman v. California*, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967); *State v. Cady*, 254 Kan. 393, 405, 867 P.2d 270 (1994).

We have specifically held in Kansas that " '[w]here the evidence of guilt is of such direct and overwhelming nature that it can be said that the erroneous admission of certain other evidence could not have affected the result of the trial, such admission is harmless error.' " *State v. Juarez*, 19 Kan. App. 2d 37, 41, 861 P.2d 1382 (1993) (quoting *State v. Thompson*, 221 Kan. 176, 183, 558 P.2d 93 [1976]).

Although the standard of "harmless beyond a reasonable doubt" as applied to errors of a federal constitutional magnitude was recognized as more stringent than the one imposed by Kansas statutes, see *State v. Fleury*, 203 Kan. 888, 893, 457 P.2d 44 (1969), in recent years a similar standard has been applied in Kansas to errors not couched as constitutional violations. See *State v. Tyler*, 251 Kan. 616, Syl. ¶ 7, 840 P.2d 413 (1992); *State v. Johnson*, 231 Kan. 151, 159, 643 P.2d 146 (1982). Where the evidence of guilt is of such a direct and overwhelming nature that it can be said that the challenged error could not have affected the result of the trial, it is harmless beyond a reasonable doubt and reversal is not required.

We need not again recite the uncontroverted testimony of each victim. The evidence in this case was overwhelming. The insignificant inconsistencies in the victims' testimony paled by comparison to the clarity and comprehensiveness of the evidence of each element of each crime. In addition, the prior crimes evidence was utilized only to satisfy the elements of the weapons charge and was referred to only briefly as being necessary for that purpose. Further, because Denney did not testify, his credibility was never an issue during the trial.

We hold the trial court's failure to give the requested instruction is harmless error beyond a reasonable doubt under the facts and circumstances of this case. In so holding, however, we caution trial judges that a limiting instruction should be given when requested by the defendant in every case where prior crimes evidence is admissible for one purpose but not for another, as is mandated by K.S.A. 60-406.

*The trial court did not err in failing to instruct the jury on the lesser included offense of attempted aggravated criminal sodomy in 93 CR 1343.*

Denney argues the trial court erred in failing to instruct the jury on the lesser included offense of attempted aggravated criminal sodomy in the case involving his assault of P.D. (93 CR 1343). He contends the instruction was necessary because P.D.'s testimony was inconclusive as to whether he actually penetrated her anus.

K.S.A. 21-3107(3) requires the "trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced."

That duty is more fully set forth in *State v. Lewis*, 256 Kan. 929, 933, 889 P.2d 766 (1995), in the following manner:

"When there is evidence upon which a conviction of a lesser included offense could be based, the district court has an affirmative duty to instruct the jury on an appropriate lesser included offense even if . . . the defendant did not request the instruction. [Citation omitted.] The evidence must be viewed in the light most favorable to the defendant and it may be inconclusive, unsatisfactory, and weak. [Citation omitted.] The instruction need not be given, however, if the evidence would not permit a rational factfinder to find the defendant guilty beyond a reasonable doubt of the lesser included offense. [Citation omitted.]"

The testimony shows P.D. at times confused the difference between penetration and ejaculation but, when viewed in its entirety, shows beyond a reasonable doubt that Denney's penis penetrated her anus and that he ejaculated on the floor. This testimony is totally consistent with P.D.'s statement to Detective Wishall. It is only if P.D.'s answer to a question which appears to have been

misunderstood is viewed in isolation and out of context that a conclusion could be reached that penetration did not occur.

In considering P.D.'s testimony as a whole, there is no evidence that would permit a rational factfinder to find the defendant guilty beyond a reasonable doubt of attempted aggravated sodomy. The trial court did not err in failing to give an instruction on the lesser included offense.

*The trial court did not err in denying Denney's claim of ineffective assistance of counsel.*

The trial court considered and denied Denney's pro se post-trial motion containing 17 allegations of ineffective assistance of counsel. It found the allegations lacked a factual basis and, even if considered, the result of the trial would not have been different given the overwhelming evidence against Denney.

Our test in determining the ineffective assistance of counsel in a criminal case is well known: "To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability the result would have been different had the defendant received effective assistance." *State v. Tucker*, 253 Kan. 38, Syl. ¶ 5, 853 P.2d 17 (1993); see *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 202 (1984).

On appeal, our function is to determine whether the findings of the trial court are supported by substantial competent evidence and are sufficient to support its conclusions of law. We accept as true the evidence and inferences drawn which support or tend to support the findings of the judge. *Taylor v. State*, 252 Kan. 98, 103-04, 843 P.2d 682 (1992). Denney has the burden of overcoming the presumption that counsel's performance was reasonable. See *State v. Rowell*, 256 Kan. 200, 213, 883 P.2d 1184 (1994).

A careful review of Dr. May's trial testimony reveals that the trial counsel sufficiently examined him concerning trauma to A.L.'s anal tract. Dr. May's evidence was clear and as helpful to Denney as possible. If expanded, the possibility of elaborating on the apparent injuries A.L. received was not only possible but likely. Ad-

ditionally, any failure to inquire of the doctor about the presence or absence of petroleum jelly is not ineffective assistance as the answer would readily have been inferred from his testimony.

Denney's allegations of ineffective assistance of counsel are without merit.

Affirmed.