(178 P.3d 672)
No. 96,120

STATE OF KANSAS, *Appellee*, v. JESSE SMITH, *Appellant*.

Opinion filed March 14, 2008.

*Jessica J. Travis*, of Keck & Travis, LLC, of Olathe, for appellant.

*Amory K. Lovin*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before GREEN, P.J., GREENE and LEBEN, JJ.

GREENE, J.: Jesse Smith appeals his conviction and sentence for rape, arguing insufficiency of the evidence, error in the admission of certain evidence, error in applying the rape shield statute, instruction error, cumulative trial error, and sentencing error. We reject Smith's challenge to the sufficiency of the evidence. We

conclude, however, that the district court erred in refusing to instruct the jury as to voluntary intoxication, but we conclude the error was harmless. Smith's remaining claims of error are rejected; thus, we affirm his conviction. His challenge to a presumptive sentence is dismissed.

## *Factual and Procedural Background*

On July 14, 2004, S.L. met Smith, her friend of 5 months, to have dinner and "a couple drinks." She considered him merely a friend, had no sexual or romantic interest in him, and was then dating another man. After dinner, they visited several bars and consumed a large quantity of beer; on the way home, S.L. passed out in Smith's vehicle. Upon arrival, Smith indicated it was not safe for her to drive and offered his bedroom, promising to sleep on the couch. Before she retired, however, she invited Smith to sleep on one side of the bed, but she did not intend to have sex with him.

According to S.L., she awakened in the night and felt something on her hips but went back to sleep until she awoke and discovered she had nothing on from the waist down. She also discovered what looked to be semen with a black pubic hair on her genital area. She tiptoed back to the bedroom, grabbed her clothes, and left. She tried to call her boyfriend on her way home, but he was upset about being awakened so she hung up.

The next day, colleagues of S.L. urged her to see a physician, and the physician urged her to go to the hospital for an exam. Her father took her to the hospital, where she was examined and spoke to police about the incident.

Smith was charged with one count of rape in contravention of K.S.A. 21-3502(a)(1)(C), proscribing the act of sexual intercourse without consent under circumstances where the victim is incapable of giving a valid consent due to the effect of alcoholic liquor or narcotic drug, which condition is known by the defendant or reasonably apparent.

At trial, Smith testified that he went to sleep on the couch and did not remember anything else until he awoke the next morning. Smith requested an instruction on voluntary intoxication, but the

district court refused to give the instruction and, instead, instructed the jury that "voluntary intoxication is not a defense to a charge of rape." Smith was found guilty by the jury, and he was sentenced to 184 months' imprisonment. He timely appeals.

### Was the Evidence Sufficient to Support Smith's Conviction of Rape?

On appeal, Smith argues the evidence was insufficient to sustain his conviction because the State did not prove S.L. was unable to give consent and the State did not prove Smith had knowledge she was unable to give consent or that this was reasonably apparent. These arguments fail.

"When the sufficiency of the evidence is reviewed in a criminal case, this court must consider all of the evidence, viewed in a light most favorable to the prosecution, and determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [Citation omitted.]" *State v. Parker*, 282 Kan. 584, 597, 147 P.3d 115 (2006).

Smith was charged and convicted of rape in contravention of K.S.A. 21-3502(a)(1)(C), which provides:

"(a) Rape is (1) Sexual intercourse with a person who does not consent to the sexual intercourse, under any of the following circumstances:

. . . .

"(C) when the victim is incapable of giving consent because of mental deficiency or disease, or when the victim is incapable of giving consent because of the effect of any alcoholic liquor, narcotic, drug or other substance, which condition was known by the offender or was reasonably apparent to the offender."

To sustain Smith's conviction the State needed to prove:

- Smith had sexual intercourse with S.L.;
- the act of sexual intercourse was committed without the consent of S.L. by reason of her inability to give consent, which was either known by Smith or was reasonably apparent to him; and
- the act occurred on or about July 15, 2004. See K.S.A. 21-3502; PIK Crim. 3d 57.01.

With regard to Smith's challenge to the evidence of S.L.'s condition, our review of the evidence shows that she was approximately 5' 6" tall, weighed 117 pounds, drank 6 to 8 beers on the evening

in question, and passed out from drinking. She unequivocally testified that she never gave consent to Smith to have sexual intercourse and would not have done so. Our Supreme Court has declined to define the degree of intoxication required to sustain a rape conviction under K.S.A. 21-3502(a)(1)(C) and has stated that "[l]ay persons are familiar with the effects of alcohol. If the jury concluded [the victim] was drunk enough to be unable to consent to sex, we should give great deference to that finding. [Citation omitted.]" *State v. Chaney*, 269 Kan. 10, 20, 5 P.3d 492 (2000).

With regard to Smith's challenge to the evidence of his knowledge of S.L.'s condition, our review of the evidence shows that Smith told her she was too intoxicated to drive home and that she should stay at his residence for the night. Moreover, S.L. testified that Smith did not attempt to wake her or otherwise seek consent before performing sexual intercourse. From this evidence, a reasonable inference can be drawn that Smith had knowledge that S.L. was unable to consent due to intoxication or that it was reasonably apparent to him. Circumstantial evidence alone may sustain a conviction for even the gravest offense. *State v. Lopez*, 36 Kan. App. 2d 723, 725, 143 P.3d 695 (2006).

Viewing this evidence in the light most favorable to the State, we believe a rational jury could have found that S.L. was too intoxicated to give consent and that Smith had knowledge of this condition, or that it was reasonably apparent, and could therefore convict him beyond a reasonable doubt of the offense charged. We reject Smith's challenge to the sufficiency of the evidence for these reasons.

### Did the District Court Err in Refusing to Instruct that Voluntary Intoxication is a Defense to this Charge?

Smith next argues that the district court erred in refusing his request to instruct the jury on his defense of voluntary intoxication. When the trial court refuses to give a requested instruction, we examine all the evidence viewed in the light most favorable to the party requesting the instruction and determine whether the evidence at trial could reasonably support a jury verdict consistent with the instruction or is contrary to the defense asserted. See *State*

*v. Maxfield,* 30 Kan. App. 2d 873, 886, 54 P.3d 500 (2001), *rev. denied* 273 Kan. 1038 (2002). Even if erroneous in some way, instructions are not reversible error if they properly and fairly state the law as applied to the facts of the case and could not have reasonably misled the jury. *State v. Edgar,* 281 Kan. 47, 54, 127 P.3d 1016 (2006).

The State argues that rape does not require specific intent on the part of the defendant, citing *State v. Cantrell,* 234 Kan. 426, 434, 673 P.2d 1147 (1983), *cert. denied* 469 U.S. 817 (1984), and that a defendant may not assert voluntary intoxication as a defense unless a particular intent or state of mind is a necessary element of the crime charged, citing *State v. Gonzales,* 253 Kan. 22, 23, 853 P.2d 644 (1993). We acknowledge these principles and note that both have been reiterated by our Supreme Court in more recent cases. See *State v. Hayes,* 270 Kan. 535, 542, 17 P.3d 317 (2001) (where crime requires specific intent, voluntary intoxication instruction is required when requested); *State v. Belcher,* 269 Kan. 2, 7, 4 P.3d 1137 (2000) (rape is not a specific intent crime).

Smith argues, however, that K.S.A. 21-3502(a)(1)(C) is unlike the other statutory proscriptions of rape in that it requires knowledge by the defendant that the victim is incapable of giving consent. He argues generally that our Supreme Court has acknowledged that voluntary intoxication is a proper defense in a situation where the defendant is not conscious of what he was doing and therefore incapable of forming the requisite state of mind for the knowledge element of the crime, citing *State v. Ludlow,* 256 Kan. 139, 883 P.2d 1144 (1994).

Our research reflects that our Supreme Court has not faced the precise issue framed by this appeal, *i.e.,* whether the knowledge requirement of K.S.A. 21-3502(a)(1)(C) justifies a voluntary intoxication defense. Even though rape has generally been held to be a crime of general intent, we do not find a case addressing the question in the context of the precise statutory subsection at issue here. We examine the statute embodying the crime and the purported defense and look for guideposts to assist our analysis.

The crime of rape where the victim is incapable of giving consent due to intoxication has been part of our rape statute since 1969. In

*Chaney*, 269 Kan. at 14-15, our Supreme Court outlined the history of the enactment and noted that as of that date, there were no published opinions in which a defendant had been found guilty under this provision. We find none since *Chaney*, which does not address the issue framed here. Based upon the statutory language, rape where the victim is unable to consent due to intoxication clearly requires, as an element of the offense, that the defendant have knowledge of this aspect of the victim's condition, or that this condition was reasonably apparent to him. This knowledge element is above and beyond whatever general intent may be required for the prohibited act of sexual intercourse.

As noted by one commentator, the knowledge element is critical because in its absence—or, at least, without a reckless element in its place—strict liability is being imposed as to the fact of defendant's knowledge. "The latter position is a troubling one, given the seriousness of the offense." LaFave, Criminal Law § 17.4, p. 872 (4th ed. 2003).

K.S.A. 21-3208 codifies the defense of voluntary intoxication. It states:

"(1) The fact that a person charged with a crime was in an intoxicated condition at the time the alleged crime was committed is a defense only if such condition was involuntarily produced and rendered such person substantially incapable of knowing or understanding the wrongfulness of his conduct and of conforming his conduct to the requirements of law.

"(2) An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but *when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind.*" (Emphasis added.)

We must determine whether the knowledge element of K.S.A. 21-3502(a)(1)(C), *i.e.*, "which condition [the victim's intoxication] was known by the offender or was reasonably apparent to the offender" is an "other state of mind" under K.S.A. 21-3208 such that voluntary intoxication should have been recognized as a defense. We answer this question in the affirmative.

Our Supreme Court has provided a helpful discussion of "state of mind" for purposes of K.S.A. 21-3208 in *Ludlow*, 256 Kan. at

144-45. The court cited Black's Law Dictionary, which now defines "state of mind" as "the condition or capacity of a person's mind" or "a person's reasons or motive for committing an act, esp[ecially] a criminal act." Black's Law Dictionary 1446 (8th ed. 2004). Most notably for our purposes is the court's reference with apparent approval to *United States v. Feola*, 420 U.S. 671, 43 L. Ed. 2d 541, 95 S. Ct. 1255 (1975), where the Court noted the absence in a certain federal criminal statute of *"any requirement for a particular state of mind such as 'knowingly' "* in holding that in order to incur criminal liability under the statute, the actor must entertain merely a general criminal intent. (Emphasis added.) See *State v. Farris*, 218 Kan. 136, 143, 542 P.2d 725 (1975). The corollary of this principle is that when a criminal statute *contains* a clear knowledge element, the crime proscribed requires a particular state of mind and makes it subject to a voluntary intoxication defense.

We recognize, however, that general criminal intent may be established by proof of intentional conduct, and that the term "knowingly" is included within the term "intentional" for these purposes. K.S.A. 21-3201. Nevertheless, when a criminal statute expressly requires specific knowledge of the victim's condition, above and beyond any general intent to commit the prohibited act, we believe this requirement is beyond any more general knowledge requirement for criminal intent. The distinction between a general intent crime and a crime of specific intent is whether, in addition to the intent required by K.S.A. 21-3201, the statute defining the crime in question identifies or requires a further particular intent which must accompany the prohibited act. See *State v. Sterling*, 235 Kan. 526, 528, 680 P.2d 310 (1984) (quoting *Cantrell*, 234 Kan. 426, Syl. ¶ 7).

Examining K.S.A. 21-3502(a)(1)(C), the prohibited act is sexual intercourse with a victim incapable of giving consent, but the statute requires a *further* state of mind of the offender, *i.e.*, knowledge of that condition if not reasonably apparent. This is a state of mind that is beyond the general criminal intent required for rape. Accordingly, we conclude the knowledge requirement of K.S.A. 21-3502(a)(1)(C) justified a voluntary intoxication defense, and Smith was entitled to have the jury so instructed.

The erroneous instruction does not require reversal, however, because our review of the whole record shows that substantial justice has been done. K.S.A. 60-2105 requires that we disregard technical errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining, where it appears upon the whole record that substantial justice has been done by the judgment. Moreover, even if Smith's claim was elevated to a constitutional deprivation, we need not reverse his judgment where the evidence of guilt is of such a direct and overwhelming nature that it cannot be said the error could have affected the result of the trial. See *State v. Denney*, 258 Kan. 437, 445, 905 P.2d 657 (1995).

Here, the evidence against Smith was indeed overwhelming. He testified that he was aware of S.L.'s inability to drive home, and he then drove her to his house. S.L. had passed out in his car, and he woke her upon reaching his house. He told the interviewing officer that he remembers telling an officer of brushing his teeth, taking his contacts out, and going to sleep. He also remembers being invited by S.L. to sleep on one side of the bed, but he claims to recall nothing thereafter, despite the clear DNA evidence of sexual intercourse with S.L. The fact that he remembers other details renders somewhat incredible his claim that he has no memory whatsoever of sexual intercourse with S.L. And, most damning, is the testimony of L.S. (detailed below), who testified to identical conduct by Smith, and which led to sexual intercourse with her after a night of mutual voluntary intoxication.

Reviewing all of this evidence, we conclude that the instruction error could not have affected the outcome of Smith's trial, and we therefore reject his contention that he is entitled to a new trial.

### Did the District Court Err in Admitting Evidence of Defendant's Earlier Conduct, Contrary to K.S.A. 60-455?

Smith also argues that the district court erred in allowing a witness, L.S., to testify regarding Smith's conduct on another occasion that was similar to his purported conduct against S.L. The district court allowed the evidence on the grounds it showed plan and absence of mistake or accident.

When reviewing a district court's decision to admit evidence, an appellate court first determines whether the evidence is relevant. Once relevance is established, an appellate court must apply the evidentiary rules governing the admission and exclusion of evidence as a matter of law or in the exercise of the district court's discretion, depending on the contours of the evidentiary rule question. When the issue involves the adequacy of the legal basis for the district court's decision, the issue is reviewed using a de novo standard. *State v. Gunby*, 282 Kan. 39, 47-48, 144 P.3d 647 (2006); see K.S.A. 60-407(f).

Prior to trial the State moved to present the testimony of L.S., who testified at trial that in December 2000 she was out with a group of people including Smith, when the group decided to go to a bar. They stayed until it closed, and she was very drunk. She was unable to drive home, so Smith suggested she come over to his house. He offered her the bed, agreeing to sleep on the couch. She did not remember how she got to Smith's apartment, but she remembered passing out once in Smith's bed. She awakened to find Smith having sexual intercourse with her, but was unable to move or speak. She testified that she did not consent in any manner to Smith's conduct, but she made no formal complaint of his conduct. They subsequently became a couple, lived together, and became engaged before breaking up in September 2003.

In examining a K.S.A. 60-455 challenge to evidence of prior bad acts, our standard of review requires threshold determinations that (1) the evidence is relevant to one or more of the statutory exceptional facts (motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident); and (2) the fact was a disputed material fact in the trial. *State v. Tiffany*, 267 Kan. 495, 498, 986 P.2d 1064 (1999). Here the evidence was clearly relevant to show motive, intent, plan, and absence of mistake or accident. We note that to show plan or modus operandi under 60-455, the evidence of the prior conduct must be so strikingly similar or so distinct to the allegations before the court that it is reasonable to conclude the same individual committed both acts. *State v. Jones*, 277 Kan. 413, 421, 85 P.3d 1226 (2004). Here, we view the evidence presented by L.S. as so distinct a method of operation

and so similar to that alleged by S.L. that it appears, indeed, to be strikingly similar.

Was motive, intent, plan, or absence of mistake or accident a disputed material fact in Smith's trial? Smith's defense was that he, too, was intoxicated and just did not remember having sex with S.L. This defense is potentially undermined by evidence of motive, intent, plan, and absence of mistake or accident. Particularly because we have held that the offense requires an element of knowledge or state of mind, and Smith challenged this element, and the fact that Smith may have intended or planned the entire encounter, thus negating any mistake or accident, enhanced the materiality of this evidence.

We conclude that the evidence of L.S.'s initial sexual encounter with Smith was admissible at trial as within the express statutory exceptions to propensity evidence set forth in K.S.A. 60-455. We further conclude that the probative value of this evidence outweighed its prejudicial effect; therefore, the district court did not err in allowing the testimony of L.S.

Finally, we note that the district court gave a prophylactic limiting instruction informing the jury of the specific purpose for the admission of L.S.'s testimony as required under these circumstances. See *Gunby*, 282 Kan. at 48-49. There was no error in the admission of L.S.'s testimony.

### *Did the District Court Err in Applying the Kansas Rape Shield Statute, K.S.A. 21-3525, to Preclude Evidence of S.L.'s Previous Sexual Conduct?*

Smith also argues that the district court misapplied the rape shield statute in refusing to allow evidence of S.L.'s sexual conduct with her boyfriend on the day prior to the purported rape. Concluding that Smith failed to comply with the procedural requirements of the statute, we need not address the merits of this argument.

K.S.A. 21-3525(b) provides:

"Except as provided in subsection (c), in any prosecution to which this section applies, evidence of the complaining witness' previous sexual conduct with any person including the defendant shall not be admissible, and no reference shall be

made thereto in any proceeding before the court, except under the following conditions: The defendant shall make a written motion to the court to admit evidence or testimony concerning the previous sexual conduct of the complaining witness. The motion must be made at least seven days before the commencement of the proceeding unless that requirement is waived by the court."

Here, no such motion was made by the defense. We construe the statute as clearly providing for the procedure as a condition to any exception to the general rule, and our court has held that any such failure to comply with the statutory procedure precludes admission of such evidence at trial. See *State v. Walker*, 252 Kan. 117, 134-35, 843 P.2d 203 (1992).

We need not address the merits of Smith's argument, but if we were to do so, we would reject it. Smith contends that evidence of S.L. having sex with her boyfriend the day prior to the purported rape was relevant to the victim's credibility and motive and otherwise relevant to rebut S.L.'s testimony that she experienced vaginal pain as a result of Smith's sexual intercourse. We are not convinced that the prior conduct was relevant to any fact at issue at trial.

Smith's challenge to the exclusion of evidence of prior sexual conduct of the victim is rejected both on procedural grounds and on its lack of merit.

### *Did the District Court Err in Giving Instruction No. 12, Which Advised the Jury How to Deliberate?*

Next, Smith asserts Instruction No. 12 was erroneous in that it told the jurors how to deliberate. The instruction at issue read:

"In order to return a verdict, all jurors must agree upon the verdict. Your deliberations should be conducted in a businesslike manner. You should first select a presiding juror who should assure that your discussion moves sensibly and orderly with each juror given the opportunity to discuss the issues fully and fairly. The person selected will preside over your deliberations, will speak for the jury in court, and sign the verdict forms upon which you agree.

"The attitude and conduct of jurors at the outset of their deliberations are matters of considerable importance. It is rarely helpful for a juror, upon entering the jury room, to make an emphatic expression of their opinion on the case or to announce a determination to stand for a certain verdict. The result of conduct of this nature might be that a juror because of personal pride would hesitate to recede from an announced position when shown that it is erroneous.

"It is natural that differences of opinion will arise. When they do, each juror should not only express their opinions but the reasons upon which they base them.

"Although a juror should not hesitate to change their vote when their reason and judgment are changed, each juror should vote according to their honest judgment, applying the law from the instructions to the facts as proved. If every juror is fair and reasonable, a jury can almost always agree.

"It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement if you can do so without compromise to your individual judgment.

"Your verdict must be founded entirely upon the evidence admitted and the law as given in these instructions.

"Your agreement upon a verdict must be unanimous.

"Verdict forms are attached to the last page of these instructions."

There was no objection to this instruction. Smith, however, argues that the instruction invaded the sanctity of the jury and violated Smith's Sixth Amendment rights. This argument fails.

An appellate court reviewing a district court's failure to give a particular instruction applies a clearly erroneous standard where a party neither suggested an instruction nor objected to its omission. *State v. Cooperwood*, 282 Kan. 572, 581, 147 P.3d 125 (2006); see K.S.A. 22-3414(3). Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred. *State v. Trotter*, 280 Kan. 800, 805, 127 P.3d 972 (2006).

It is unclear why Smith believes this instruction violated his rights. It was given to the jurors prior to deliberations and effectively only instructs them on how to achieve a verdict honoring others' opinions without compromising individual judgment. We are simply not offended by any aspect of the instruction. It seeks fairness and reasonableness of each juror. Although it commands consultation and deliberation "with a view to reaching an agreement," it carefully admonishes against any compromise to individual judgment.

We fail to appreciate any error in the instruction as given. Although pattern instructions are strongly recommended, mere departure from the pattern instructions does not necessarily render an instruction erroneous. *State v. Hebert*, 277 Kan. 61, 87, 82 P.3d

470 (2004). We are not convinced that there is any possibility the jury would have rendered a different verdict had this instruction been omitted or stated differently. *Trotter*, 280 Kan. at 805. Accordingly, Smith's challenge to this instruction fails.

### *Did the District Court Err in Designating a Certain Juror as an Alternate?*

Smith next challenges the district court's decision to designate a juror as an alternate for purposes of deliberation, arguing that the juror's removal was violative of *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986). This argument is not well formulated under *Batson* and is otherwise without merit.

Toward the end of a 5-day jury trial, the prosecutor brought to the court's attention that a juror heard another juror's cell phone conversation wherein she mentioned the defendant's name and the name of the purported victim, and that "he" (presumably the defendant) was a friend. The court then conducted a short interrogation of the reporting juror, followed by an interrogation of the implicated juror, both outside the presence of other jurors. Following these proceedings, the prosecutor stated on the record that the State "would probably want her removed and have the alternate sit in"; the defense objected, stating: "There's absolutely no legal reason to remove her." The court left the implicated juror on the panel but promised to "make a decision" at some later time.

Following the close of evidence in the trial, the implicated juror requested to speak to the court and was permitted to attempt a clarification of her phone call that led to the initial report. After deciding not to seat the implicated juror but to designate her an alternate, the judge told counsel that the juror had contradicted herself and explained his reasoning:

"To me those are contradictory statements, and to be safe what I did was to avoid the appearance of even impropriety, I think, at this stage of the game where they have not started deliberations, 13 jurors have sat and listened to all the evidence in this case. They were all selected by Counsel, and we had sufficient jurors for Counsel to make an objection to them, so at any rate, I've sent the 12 out to deliberate. I think I have sufficient discretion to do that."

Our Supreme Court has held that the substitution of an alternate juror for one of the original 12 jurors for reasonable cause is within the prerogative and discretion of the trial court, especially where the substitution is made prior to the jury deliberating. *State v. Folkerts*, 229 Kan. 608, 616, 629 P.2d 173, *cert. denied* 454 U.S. 1125 (1981); see K.S.A. 22-3412(c). In *State v. Cheek*, 262 Kan. 91, 102, 936 P.2d 749 (1997), the court held there is no right under Kansas law to the original twelve jurors.

Here, the district court handled the situation without flaw. The report of the complaining juror was examined on the record, and the implicated juror was interrogated on the record. The court concluded that to avoid the appearance of impropriety, the juror should be exchanged with an alternate, and the exchange was made prior to deliberations. The juror questionnaires in the record indicate the panel included two Hispanics and five African-Americans; no prima facie claim under *Batson* has been articulated. See *Trotter*, 280 Kan. at 811-12.

We conclude that there was sufficient cause to prompt the court's remedial action and that the substitution was no abuse of discretion.

### Did Cumulative Trial Errors Deny Smith a Fair Trial?

Smith also claims that cumulative trial errors denied him a fair trial. We have examined the totality of the alleged errors, however, and we have concluded that the only error committed by the trial court was the failure to instruct on voluntary intoxication as a defense. Moreover, we have also concluded that the evidence was so overwhelming against Smith that the instruction error did not entitle him to a new trial. There is no need to consider or discuss Smith's claim of cumulative errors. See *State v. Davis*, 283 Kan. 569, 583, 158 P.3d 317 (2007).

### Smith's Challenge to His Presumptive Sentence Must be Rejected Due to Lack of Jurisdiction

Finally, Smith challenges his presumptive sentence, arguing that the district court erred in denying his motion for downward departure. We have no jurisdiction to consider such a challenge.

K.S.A. 21-4721(c)(1); *State v. Flores*, 268 Kan. 657, 659-60, 999 P.2d 919 (2000).

### Summary and Conclusion

We reject Smith's challenge to the sufficiency of the evidence to support his conviction, together with all other claims of trial error, with the exception of the refusal of the district court to instruct on the defense of voluntary intoxication. This error does not entitle Smith to a new trial, however, because overwhelming evidence supports his conviction. His sentencing challenge is dismissed due to lack of jurisdiction.

Affirmed in part and dismissed in part.