NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

BENITO MANRIQUEZ GONZALEZ, *Appellant.*

No. 1 CA-CR 19-0202
FILED 10-6-2020

Appeal from the Superior Court in Maricopa County
No.  CR 2018-125217-001
The Honorable Douglas Gerlach, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael F. Valenzuela
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jesse Finn Turner
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge D. Steven Williams and Judge Paul J. McMurdie[1] joined.

**B R O W N**, Judge:

¶1        Benito Manriquez Gonzalez appeals his convictions and sentences for three counts of sexual abuse.  He argues the superior court erred by precluding evidence of the victim's alleged sexual encounter with another individual because the evidence was relevant to show motive and bias.  For the following reasons, we affirm.

## BACKGROUND

¶2        The victim, A.M., and Gonzalez's daughter, Jessica[2], were "on again, off again friends."  When she was in sixth grade, A.M. visited Jessica at Jessica's grandmother's house.  A.M. went into the bathroom to change into her swimsuit and allegedly found Gonzalez hiding in the shower with his phone.  On another occasion, A.M. spent the night at Jessica's house and Gonzalez allegedly came into the room and touched her vagina under her clothing.  Gonzalez allegedly touched A.M. inappropriately on several other occasions.

¶3        After not communicating for some time, A.M. reconnected with Jessica the summer between her freshman and sophomore years of high school; they planned a sleepover at Jessica's home.  On July 1, 2017, Gonzalez picked A.M. up in his van and while driving back to his home, he grabbed her breasts over her clothes.  A.M. pushed his hand away and told him to stop.

¶4        When the girls went to sleep in Jessica's room that evening, they moved the mattress from the top bunk and put it on the floor for A.M.

---

[1]        Judge Paul J. McMurdie replaces the Honorable Kenton D. Jones, who was originally assigned to this panel.  Judge McMurdie has read the briefs and reviewed the record.

[2]        Although Jessica is not a victim, because she was a minor at the time of the offense and given the nature of the issues raised on appeal, we refer to her by pseudonym to protect her identity.

to sleep on. Jessica fell asleep, and A.M. stayed awake and was video-chatting with a friend on her phone when Gonzalez came into the room and told her to go to sleep. Gonzalez returned to the room a few minutes later, and A.M. put her phone on mute. Gonzalez forced his way on top of A.M. and touched her breast under her bra with one hand while putting his other hand into her underwear, touching her vagina. A.M. told him to stop but tried to stay quiet because she did not want to wake Jessica. A.M. pushed Gonzalez off her at one point, but he forced himself back on top of her again. He used more force the second time and repeatedly said "just let me" when she told him to stop and leave. Gonzalez eventually left the room.

¶5 A.M. then contacted a friend, and the friend and her grandmother agreed to pick A.M. up at a nearby community center. The incident was reported to law enforcement, at which time A.M. spoke to a police officer and, the next day, received a medical exam. A.M. told the nurse she had not showered since the event occurred and had only changed her shorts. Testing later revealed male DNA on A.M.'s right breast, left breast, face, right neck, left neck, and external genitals. The test also revealed that the DNA on A.M.'s right breast and right neck matched Gonzalez's DNA. Several months later, a detective asked Gonzalez why his DNA was on A.M.'s breast and neck. Gonzalez said he "didn't have a reason," and "shrugged his shoulders and chuckled." The State then indicted Gonzalez on charges of voyeurism, aggravated assault, and sexual abuse, allegedly occurring on various dates between July 2013 and June 2017; and three counts of sexual abuse relating to the July 2017 incident.

¶6 Shortly before trial, the State filed a motion in limine seeking to preclude, inter alia, Gonzalez from presenting evidence of the victim's sexual history under A.R.S. § 13-1421, Arizona's rape shield statute. Specifically, the State noted that "[Gonzalez] and his witness have made insinuations" that the victim had a sexual relationship with Jessica, but that Gonzalez had not filed the notice required by § 13-1421(B). The next day the parties met for a pretrial conference, and defense counsel stated he did not object to the State's motion. However, he changed his position the following day, raising an objection to precluding prior sexual acts under § 13-1421. Gonzalez argued § 13-1421 should not apply because the alleged sexual conduct between A.M. and Jessica was not "past conduct" and it was the reason he went into Jessica's bedroom. Specifically, defense counsel asserted his client went into Jessica's room because he heard noises and "saw something he considered inappropriate." The State responded that it filed the motion, in part, because Gonzalez told police that when he entered the room A.M. was not wearing a top or bra when he found her lying in bed with Jessica and he insinuated they were having "a lesbian affair." The

State added that Jessica told a detective she and A.M. were kissing and A.M. was trying to engage in other sexual conduct. According to the State, A.M. denied those allegations.

¶7        Although the court generally agreed that Gonzalez had the right to explain why he went into the bedroom, it later clarified that under Arizona Rule of Evidence ("Rule") 403, Gonzalez could testify that he heard noises coming from his daughter's room, but could not testify about what he discovered when he entered the room unless he could show that such evidence would make the accusations against him more or less probable. Gonzalez expressed concern that the jury would not understand he "pulled the covers" off the girls because he thought they were engaged in a sexual relationship and that in response to what he discovered, he was yelling and stuttering, which is how his spit landed on A.M.'s body. Gonzalez planned to introduce this evidence to show the spit was the source of his DNA on A.M.[3]

¶8        Gonzalez raised the issue again at the close of jury selection. The superior court ruled that Jessica could testify as to what she saw regarding Gonzalez's conduct, but she could not testify about what happened before he came into her room because it was not relevant as to Gonzalez's behavior. The court clarified that Gonzalez could testify about what he observed when he walked into Jessica's room to explain his reaction and why saliva came out of his mouth, the saliva being a potential source of the DNA later found on A.M.'s body. At the same time, Gonzalez admitted he did not see them engaged in sexual behavior when he entered the room, he just perceived they were doing so because they were lying together.

¶9        A jury found Gonzalez guilty on the three counts of sexual abuse that occurred on or about July 1, 2017, but not guilty of the remaining counts. The superior court sentenced him to consecutive terms of two years

---

[3]       At trial, Gonzalez testified that he entered the room because he heard "moaning." He shouted at the girls angrily, called them "dirty," and told A.M. he "was going to tell her mom everything [he] knew," to which he heard A.M. say, "well, fine[,] but . . . you don't have to spit, man, or something like that." Other than this vague reference to spitting, Gonzalez provided no evidence indicating why his DNA was found on A.M.'s breast and neck.

in prison for two counts and imposed lifetime supervised probation on the third count. Gonzalez timely appealed.

## DISCUSSION

**¶10** The superior court has considerable discretion in determining the relevance and admissibility of evidence, and we will not disturb its ruling absent an abuse of discretion. *State v. Rose*, 231 Ariz. 500, 513, ¶ 62 (2013); *State v. Gilfillan,* 196 Ariz. 396, 405, ¶ 29 (App. 2000*), abrogated on other grounds by State v. Carson*, 243 Ariz. 463 (2018). We review de novo the interpretation of statutes. *State v. Gates*, 243 Ariz. 451, 453, ¶ 7 (2018). We may "affirm a court's evidentiary ruling on any basis supported by the record." *State v. Inzunza*, 234 Ariz. 78, 83, ¶ 18 (App. 2014).

**¶11** Arizona's rape shield statute provides in relevant part:

A. Evidence relating to a victim's reputation for chastity and opinion evidence relating to a victim's chastity are not admissible in any prosecution for any offense in this chapter. Evidence of specific instances of the victim's prior sexual conduct may be admitted only if a judge finds the evidence is relevant and is material to a fact in issue in the case and that the inflammatory or prejudicial nature of the evidence does not outweigh the probative value of the evidence, and if the evidence is one of the following:

. . .

3. Evidence that supports a claim that the victim has a motive in accusing the defendant of the crime.

. . .

B. Evidence described in subsection A shall not be referred to in any statements to a jury or introduced at trial without a court order after a hearing on written motions is held to determine the admissibility of the evidence. . . . The standard for admissibility of evidence under subsection A is by clear and convincing evidence.

A.R.S. § 13-1421.

¶12        Gonzalez argues the superior court erred by not allowing him to introduce evidence of A.M. and Jessica's alleged sexual activity. We disagree on several grounds.

¶13        First, the alleged sexual activity evidence Gonzalez sought to present at trial was presumptively prohibited by the plain language of § 13-1421(A). Gonzalez was therefore required to establish that the evidence could be admitted under at least one of the listed exceptions. But he did not file a written motion or otherwise request that the court hold a hearing. Nor did he assert the motive exception supported admission of the alleged sexual activity. *See infra* ¶ 18 A.R.S. § 13-1421(A)(3). And other than general assertions about the alleged sexual activity made by his counsel, Gonzalez made no attempt to support those assertions with any evidence, which necessarily means he did not satisfy the "clear and convincing" requirement of the statute. A.R.S. § 13-1421(B).

¶14        Second, based on his counsel's statements to the court, Gonzalez did not see A.M. and Jessica engaged in sexual activity. He merely "perceived" they were engaged in such activity because they were lying together. Evidence of a *speculative* relationship is irrelevant and immaterial. *See State v. Herrera*, 232 Ariz. 536, 550, ¶ 40 (App. 2013); *see also* Ariz. R. Evid. 401 (Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence."). Moreover, no evidence presented at trial supports his speculative assertion about the alleged sexual activity. DNA testing showed there was male, not female, DNA on A.M.'s right breast, left breast, face, right neck, left neck, and external genitals. And the testing revealed the DNA on A.M.'s right breast and right neck matched Gonzalez's DNA.

¶15        Third, we reject Gonzalez's contention that the superior court misapplied Rule 403 by evaluating whether the evidence made the offense more likely, rather than evaluating whether the evidence was relevant for any reason. He argues the evidence of A.M. and Jessica having a sexual encounter is so relevant that no amount of prejudice could ever substantially outweigh it. As provided by Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." As noted, the court gave the parties multiple opportunities to discuss what evidence Gonzalez would be able to present about what he heard and saw when entering the bedroom, and the court gave Gonzalez wide latitude in testifying regarding his perceptions of that portion of the incident. Thus, the court did not abuse its discretion in

finding that the alleged sexual activity with Jessica was precluded by Rule 403. *See State v. Williams*, 133 Ariz. 220, 230 (1982) (explaining that weighing and balancing the Rule 403 factors falls within the trial court's discretion and "will not be disturbed on appeal unless it has been clearly abused").

¶16　　　　Fourth, the superior court's ruling is consistent with the purpose of § 13-1421, which is "intended to protect victims of [sex crimes] from being exposed at trial to harassing or irrelevant questions concerning any past sexual behavior." *Gilfillan,* 196 Ariz. at 400-01, ¶ 15; *see Michigan v. Lucas*, 500 U.S. 145, 146, 150 (1991) (noting that a rape shield law is "designed to protect victims of rape from being exposed at trial to harassing or irrelevant questions concerning their past sexual behavior," and it "represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy"). Accordingly, the court properly applied A.R.S. § 13-1421, Rule 401, and Rule 403 in permitting Gonzalez to explain why he entered the room, what he said, and what he observed, but precluding him from exploring the unproven allegations about A.M.'s purported sexual activity with Jessica.

¶17　　　　Gonzalez argues nonetheless that § 13-1421 does not apply because it does not address what happened here—alleged sexual activity occurring contemporaneously with the conduct underlying the sexual abuse convictions. Two of the sexual abuse counts were based on conduct that occurred *after* the alleged sexual activity between A.M. and Jessica. Thus, that activity constitutes A.M.'s "prior sexual conduct," which is barred from admission at trial under § 13-1421 unless an exception applies. *See State v. Burbey*, 243 Ariz. 145, 147, ¶ 7 (2017) ("When the text is clear and unambiguous, we apply the plain meaning and our inquiry ends."); *see also Conrad v. State*, 938 N.E.2d 852, 856 (Ind. Ct. App. 2010) (finding that evidence alleging the victim may have been engaged in activities of a sexual nature earlier in the same evening as the assault was properly precluded as evidence of "past sexual conduct" under rape shield law); *State v. Smith*, 178 P.3d 672, 681 (Kan. Ct. App. 2008) (finding the victim's sexual conduct with her boyfriend the day before she was raped was not relevant). The third count of sexual abuse was based on the incident in Gonzalez's van before the sleepover. Thus, it presumably does not fall within the "prior sexual conduct" category. However, because the alleged sexual activity between A.M. and Jessica occurred before Gonzalez's conduct that formed the basis for the other two sexual abuse counts, the superior court did not abuse its discretion in precluding the alleged sexual activity.

¶18        Gonzalez further contends that even if § 13-1421(A) applies, the evidence of A.M. and Jessica's alleged sexual activity should have been admitted under subsection (A)(3) to show A.M.'s motive and bias. He also argues he was denied his constitutional rights to due process and the right to confront witnesses by not being able to testify regarding those factors. Because Gonzalez raises these issues for the first time on appeal, he must show that fundamental, prejudicial error occurred. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018).

¶19        As noted, Gonzalez did not file a motion as required by § 13-1421(B) or request a hearing. And nothing in the record shows that he met the statute's clear and convincing standard of admissibility. Gonzalez has therefore failed to meet his burden of showing that the superior court committed fundamental error because the court acted in its discretion in precluding the evidence of A.M. and Jessica's alleged sexual activity. Accordingly, we need not address Gonzalez's arguments that he was denied due process, the right to confront witnesses, or the right to present a complete defense.

## CONCLUSION

¶20        For the foregoing reasons, we affirm Gonzalez's convictions and sentences.

